UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| JANE DOE, | |
|---|---|
| Plaintiff | Case No. |
| v. | |
| SHERRIFF GARRY MCFADDEN, et al, | Hon. |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT SHERIFF MCFADDEN

### INTRODUCTION

On February 28, 2024, Defendant Sheriff Garry McFadden, by and through his employees Defendants Officer A and Officer B, took an illegal booking photograph of Jane Doe without her religiously mandated hijab and uploaded that image to their public database. Veri. Compl. at 2. Doe seeks to have her right to wear the hijab, a critical religious requirement and representation of her relationship with God, respected. Her religious beliefs mandate a high degree of modesty in front of males outside her immediate family, including the hijab. *Id.* ¶25. This is not just required in physical interactions, but also in photographs and video footage of Doe. *Id.* ¶26.

Together, the Defendants' actions have violated the First Amendment to the United States Constitution, 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 U.S.C. § 2000cc, and the Texas Religious Freedom Act, Tex. Civ. Prac. & Rem. Code § 110.003. This image is still accessible

1

through the Mecklenburg County Sheriff's Office website. This illegal photograph is easily accessible to the public, all one needs is Doe's true name.

Doe now seeks relief from this Court in the form of emergency injunctive relief. Doe respectfully asks this Court to enjoin the official capacity defendant, Sheriff McFadden, to (1) take all possible steps to destroy Doe's uncovered photographs from their database and, if necessary, replace it with a new photograph with her hijab, (2) take all reasonable steps to contact any other agency they have distributed the image to requesting its destruction from those databases or providing the replacement photo, and (3) take all possible steps to destroy any existing security footage in their database of Doe without her hijab while in the facility.

Doe is entitled to emergency injunctive relief at this stage as she is likely to succeed on the merits of this case under the RLUIPA and will otherwise suffer irreparable harm. The Government, on the other hand, could easily use a covered photograph to maintain their security interest in identification without substantial burden.

## FACTUAL BACKGROUND

Jane Doe is a Muslim woman and a resident of Charlotte, North Carolina. Veri. Compl ¶22. Doe's faith requires her to always wear a hijab when in mixed-gender spaces outside of her immediate family. *Id*. ¶25. The practice of wearing hijab includes not only the headscarf but also the clothing that covers her full body *Id*. Doe's religious

beliefs are deeply rooted in Islamic texts and teachings. *Id*. Her hijab is a pillar of her religious practice, and integral to her identity as a Muslim woman *Id*. Doe has worn the hijab since she was about 21 years of age. *Id*. ¶23. Appearing in public without a hijab is a serious breach of Doe's faith, thus any picture of Doe without a hijab that is accessible by men who are not immediate family members seriously breaches Doe's faith. *Id*. ¶25.

In February 2024, Doe protested outside of a City Council meeting. That protest led Charlotte Mecklenburg Police Department to issue a warrant for Doe on February 27, 2024 for violating a noise ordinance and for impeding traffic. *Id*. ¶27. The next day, on February 28, Doe voluntarily turned herself in at the Mecklenburg County Detention Center Central. *Id*. ¶28. Doe arrived at MCDCC wearing her hijab, as she always did in public. *Id*. ¶29. Upon arrival at MCDCC, two officers checked in Doe and asked her faith, to which she replied that she is Muslim. *Id*. ¶30-31.

After getting checked in, one officer escorted Doe to an open area for photos and fingerprinting. *Id*. ¶33-34. Between the holding cells and other officers in the open area, at least thirty men could all see Doe in the open area. *Id*. Defendant Officer A searched Doe in full view of these men. *Id*. ¶37. In the course of her search, Defendant Officer A lifted Doe's shirt, revealing her abdomen to the room, and patted Doe's breasts. *Id*. ¶37-38. Doe felt violated and humiliated for being exposed in front of a group of strange men. *Id*. ¶38-43. Defendant Officer A then told Doe she had to remove her hijab to search Doe's hair and take her booking photo. *Id*. ¶38-47. Doe strongly

3

protested. *Id*. She begged Defendant Officer A to allow her to keep her hijab on in accordance with her religious beliefs. *Id*. Defendant Officer A refused. *Id*. Despite Doe's insistence on keeping her hijab on for around two minutes, Defendant Officer A continued to refuse. *Id*. Doe finally relented and Defendant Officer a removed her hijab in full view of over thirty men. *Id*. Doe felt naked and embarrassed at being seen without her hijab. *Id*.

After Defendant Officer A removed Doe's hijab, Defendant Officer B informed Doe that he would take her photo. *Id*. ¶49. Despite Doe's previous protests—which Defendant Officer B heard—Defendant Officer B photographed Doe without her hijab. *Id*. ¶49-51. This photo of Doe without her hijab was uploaded to the Mecklenburg County Sheriff's Office website where it is still accessible to the public. *Id*. ¶53.

The officers escorted Doe back to the open area without her hijab, where they took her fingerprints and completed other tests while she remained without her hijab. The officers then kept Doe there for seven hours in full view of at least thirty men, causing her further distress and humiliation. *Id*. ¶55-59. The officers even forced Doe to appear before a magistrate judge without her hijab, where she could be seen by the judge and others. *Id*. ¶57. While she was being released, Doe asked an Officer for her hijab back. The officer handed her a plastic bag with her personal items including her hijab but told Doe that she could not open the bag until she crossed over from the area where the cells were to the main lobby of the facility. *Id*. ¶60-62. This, again,

unnecessarily exposed Doe in front of several strangers including men. *Id*. When Doe finally entered the lobby, she immediately put on her hijab. *Id*. After hours of humiliation without her hijab, Doe was finally able to continue practicing her faith. *Id*.

## ARGUMENT

**I. Doe is Entitled to an Injunction because all Four *Winter* Factors Favor Granting her an Injunction.**

A plaintiff is entitled to a preliminary injunction when she can establish (1) likely success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tip in her favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each of these factors weighs in favor of Doe.

**a. Doe is Likely to Succeed on the Merits.**

RLUIPA prohibits the government from (1) "substantially burden[ing]" a person's (2) sincere religious beliefs unless it demonstrates that (3) the burden furthered a "compelling government interest," and (4) did so by the "least restrictive means possible." 42 U.S.C. §2000cc(a)(1)-(2). The defendants have violated RLUIPA by forcing Doe to remove her hijab for a mugshot photo then retaining that photo and making it available to the public. Denying Doe the right to wear her hijab substantially burdens her sincerely held belief to wear the hijab in public. This denial does not further any compelling government interest, certainly not one that cannot be fulfilled by alternative means.

5

### 1. The Government's Removal of Doe's Hijab Substantially Burdens Doe's Sincerely Religious Beliefs.

The government imposes a substantial burden on an incarceree when it "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187, (4th Cir. 2006). This inquiry asks only how a government policy or practice affects the incarceree's own subjective perception of how they should practice their faith. *See Holt v. Hobbs*, 574 U.S. 352, 358, 360 (2015); *see McAlister v. Livingston*, 348 Fed. Appx. 923, 935 (5th Cir. 2009) ("[T]he important inquiry was what the prisoner claimed was important to him.").

Doe sincerely believes that her faith requires her to wear the hijab in public. Doe made this clear to the defendants when they told her she must remove her hijab to take her booking photo. Despite knowing she held this belief, the defendants forced her to remove that hijab for a public photo in full view of strangers to Doe. Doe always wears hijab in public, so by making her remove it, the Government has substantially burdened Doe's practice by forcing her to modify her religious behavior and thus violate her religious beliefs. See *Lovelace*, 472 F.3d at 187. Indeed, that substantial burden persists through today, as the Government continues to have the illegal photo publicly available, both through their official website and in their database (available to male staff and the public by a simple FOIA request).

And though the Fourth Circuit has yet to decide on this specific issue—the application of RLUIPA to a Muslim woman wearing her hijab for a booking photo— each district court confronted with this issue thus far has agreed that forcing a woman

to remove her hijab amounts to a substantial burden. *See Omeish v. Kincaid*, 616 F.Supp.3d 486, 494 (E.D. Va 2022); *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 180 (D. Conn. 2009) (Muslim woman subjected to cross-gender pat-down searches and photographed without her hijab, substantially burdening her sincerely held religious beliefs); *see also Soliman v. City of New York*, No. 15CV5310PKCRER, 2017 WL 1229730, at *8 (E.D.N.Y. Mar. 31, 2017) (agreeing that Muslim plaintiff had plausibly alleged a "constitutional right to have her official Department photograph taken outside the presence of male officers, as required by her religious beliefs."). *Cf. Richardson v. Clarke*, 52 F.4th 614 (4th Cir. 2022) (Muslim inmate sued regarding the prison's head coverings policy. Head coverings needed to be removed in certain areas of the prison. The Fourth Circuit held that head covering policy was an unlawful substantial burden.).

### 2. The Burden Imposed on Doe's Religious Beliefs Does Not Further a Compelling Government Interest by the Least Restrictive Means Possible.

Once a plaintiff shows that the government has imposed a substantial burden on her religious exercise, the onus shifts to the government to demonstrate that the burden it has imposed furthers a compelling interest by the least restrictive means. *Lovelace*, 472 F.3d at 185-86. This standard is "'exceptionally demanding' and requires the government to 'show that it lacks other means of achieving its desired goal…'" *Holt v. Hobbs,* 574 U.S. 352, 364 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.* 573 U.S. 682, 728 (2013)); *see Jehovah v. Clark*, 798 F.3d 169, 176-77 (4th Cir. 2015) ("The least-restrictive means standard is exceptionally demanding, and it requires the

7

government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party.") (quoting *Holt*, 574 U.S. at 365). To satisfy this burden, a defendant itself must "foreclose the availability of alternative means of furthering their alleged compelling interest." *Lozano*, 98 F.4th at 624. (citing *Ramirez v. Collier*, 595 U.S. 411, 432 (2022) ("Texas does nothing to rebut these obvious alternatives, instead suggesting that it is [plaintiff's] burden to identify any less restrictive means. That gets things backward.") (internal quotations omitted).

The Government here cannot meet this demanding standard. The only interest the Government could claim in having a booking photo of Doe without a hijab would be for identification purposes. Identity is certainly a compelling interest, but not only does forcing Doe to remove her hijab fall short of being the only "means of achieving [this] goal," *Lozano*, 98 F.4th at 624, it makes that compelling interest more difficult to achieve. The only time Doe is willingly seen without her hijab is private spaces like her home where there are no men outside her immediate family present. It would stretch credulity to suggest that having a photo of Doe without her hijab would further the Government's interest in identifying her when the government would only otherwise see Doe with her hijab on. The Government could only further its goal of identifying Doe using her booking photo by allowing Doe to practice her faith and keep her hijab on. Instead, the Government both substantially burdens Doe's religious practices and works against its own interest by forcing Doe to remove her hijab, then keeping and publicizing the picture of Doe without her hijab.

8

On the whole, it is widely accepted that all one needs to properly identify somebody is a clear image of their face, without obstructions. The Government has no reason to suggest otherwise. The United States Department of State allows persons to wear religious head coverings in their passport photos so long as their faces remain visible. U.S. Foreign Affairs Manual 8 FAM 402.1- 4(c)(3) ("[H]ead coverings may be acceptable if the applicant can establish that the hat or head covering is part of recognized, traditional religious attire which is customarily or required to be worn continuously when in public.").[1] The US Bureau of Consular Affair's website features photographic examples of this exception in practice. Presently, the page shows a contrasted 'acceptable' image of a woman with a hijab that fully shows her face against an 'unacceptable image' where the same woman's hijab blocks part of her face.[2]

Furthermore, other state and local carceral facilities across the country— including the State of New York Department of Correctional Services—allow Muslim women to wear their hijab while being photographed during booking.[3] This past year, the State of California signed legislation providing this exact protection for religious head coverings in carceral facilities.[4] So why won't MCDCC do the same? The current burden imposed by MCDCC is not the least restrictive means of serving their interest

---

[1] *See* US Dept of State, Bureau of Consular Affairs https://travel.state.gov/content/travel/en/passports/how-apply/photos.html
[2] *Id.*
[3] *See* State of New York, Dep't of Correctional Servs., Directive No. 4202, Religious Programs and Practices at 9. (October 19, 2015); *See also* https://www.nytimes.com/2020/11/09/nyregion/hijab-muslim-nypd-mugshotscarves.html.
[4] *See* https://sd15.senate.ca.gov/news/ca-governor-signs-law-expanding-religious-rights-incarcerated (State of California passed legislation protecting religious head coverings in prisons in October of 2023).

9

in identifying arrestees A hijab less photo did not need to be Doe's standard identification photograph while being booked and detained. She could just as easily be identified with her hijab on, so long as her face is clearly visible like in a passport or driver's license photo. And certainly, since Doe has been released and is willing to retake her photograph with her hijab on to replace all existing hijab less photos in every database, there is no reason to continue to use the illegal photograph.

**b. Allowing Illegal Images of Doe to Remain on MCDCC's Database Will Continue to Cause Her Irreparable Harm.**

The second *Winter* factor asks courts to consider whether a Plaintiff is likely to suffer irreparable harm in the absence of a preliminary injunction. *Winter*, 555 U.S. at 24. In the absence of a preliminary injunction, Doe will continue to suffer irreparable harm as a result of the Government's custody and dissemination of her hijab-less photograph.

RLUIPA/RFRA violations inherently constitute irreparable injury. *See, e.g., Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012); *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005). Moreover, when an "alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary." *King v. Calderin*, No. 221CV01452CDSBNW, 2023 WL 3182656, at *5 (D. Nev. May 1, 2023); *Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159, 1170–71 (D. Nev. 2019), *on reconsideration in part*, No. 217CV02574JADVCF, 2019 WL 2905044 (D. Nev. July 5, 2019); 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §

10

2948.1 (3d ed.) (footnotes omitted)). Violation of an inmate's beliefs constitute an irrevocable, irreparable harm. *Smith v. Li*, 599 F.Supp. 3d 706, 713 (M.D. Tenn. 2022).

Doe believes in covering her body and hair in public. The defendants exposed her abdomen and hair, and patted Doe's breasts in full view of strange men. The defendants then took a booking photo of Doe without her hijab and disseminated that image publicly. Every day these images exist, Doe continues to suffer. Doe suffered irreparable harm the moment she was forced to remove her clothes in front of strange men, continues to suffer irreparable harm with the publicly available photo, and will continue to suffer harm in the absence of a preliminary injunction ordering the destruction of the illegal images.

### c. The Balance of Equities Favors Doe.

The third *Winter* factor requires courts to "balance the competing claims of injury and [] consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. (internal quotations omitted). Doe's interests in abiding by her faith are recognized by Congress itself, which passed RLUIPA unanimously in both houses. "By passing RLUIPA, Congress determined that prisoners ... have a strong interest in avoiding substantial burdens on their religious exercise, even while confined." *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022). The balance of equities favors Doe because of the substantial burden placed on her religious exercise by defendants. They move even stronger in her favor when considering the humiliation she experiences as the photos continue to remain public.

Moreover, the balance of equities tends to tip in a Plaintiff's favor when the injunction they seek is narrow. See *Gonzales v. Collier*, 610 F.Supp.3d 963, 982 (S.D. Tex. 2022). (finding that the balance of equities tip in Plaintiffs favor when the relief sought would not disrupt Defendants' punitive objective). Doe seeks a slight accommodation, rather than an injunction that would require the Government to have no record of her. Doe simply seeks an injunction that would prevent any men from being able to access a photo of her without a hijab. And, she is willing to retake the booking photo for the Government's records with her hijab on.

By contrast, the government has no interest that cannot be accommodated through less restrictive means. The Government has no interest in the enforcement of an unconstitutional act. *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). The balance of harms enquiry can stop there.

Yet, even otherwise, courts have recognized that preventing RFRA violations "is in the public interest and tips the balance of harms in the plaintiff's favor." *Smith v. Commissioner*, 844 F. App'x. 286, 294 (11th Cir. 2021). This is in accordance with the broad rule of construction mandated by Congress in favor of assertions of religious liberty: "This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

### d. The Public Interest Favors Injunctive Relief for Doe.

Finally, "securing First Amendment rights is in the public interest." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). "[I]njunctions

protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *accord Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (holding that where a law violates the First Amendment "the public interest was not disserved by an injunction preventing its implementation"). "This principle applies equally to injunctions protecting RLUIPA rights because, as discussed, RLUIPA enforces the First Amendment and must be construed broadly." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012). Upholding constitutional rights is always in the public interest. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013).

Ultimately, respect for Doe's religious beliefs is sufficient to meet the public interest threshold. She has been denied her constitutional rights. She has been denied statutory rights designed to buttress those constitutional rights. "The vindication of constitutional rights and the enforcement of a federal statute serve the public interest almost by definition." *City Walk— Urb. Mission Inc. v. Wakulla Cty. Fla.*, 471 F. Supp. 3d 1268, 1288 (N.D. Fla. 2020); *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012). This principle applies to RLUIPA and RFRA, which enforces First Amendment rights. An injunction protecting Doe's rights would serve the public interest.

## CONCLUSION

This Court should grant a preliminary injunction ordering the Government to (1) take all possible steps to destroy Doe's uncovered photographs from their database and, if necessary, replace it with a new photograph with her hijab, (2) take all reasonable steps to contact any other agency they have distributed the image to requesting its destruction from those databases or providing the replacement photo, and (3) take all possible steps to destroy any existing security footage in their database of Doe without her hijab while in the facility.

Respectfully submitted,

/s/Ismaail Qaiyim
Ismaail Qaiyim, Esq. (56744.)
 Queen City Community Law Firm
4938 Central Ave.
Charlotte, NC 28205
(980)281-2798
www.qcclawfirm.com

*Co-Counsel for Plaintiff*

/s/Lena F. Masri_____
Lena F. Masri (VA 93291)*
lfmasri@cair.com
Gadeir Abbas (81161)*
gabbas@cair.com
Nadia Bayado (DC 90023648) *
nbayado@cair.com
**CAIR NATIONAL LEGAL DEFENSE FUND**
453 New Jersey Ave SE
Washington, DC 20003
(202) 742-6420

*Co-Counsel for Plaintiff*

*Pro Hac Vice applications pending

**Dated:** September 27, 2024